My name is Angela Wong, and I represent the appellant in this matter, Mr. Neal James. This case essentially concerns what the revelant inquiry is when determining a worker's status as a ship repairer for purposes of Section 905B of the Longshore Harbor Workers' Compensation Act. In plainest view, we believe that the trial court erred when it failed to consider Mr. James's entire course of history with this one particular employer, Wards Cove Packing, when it made its decision to – when it determined that he was not a seaman as a matter of law. And, in fact, what the trial court ended up doing was to limit that seaman inquiry to about a two-month period of time that he had worked for Wards Cove just prior to his injury. But, Counsel, if you look at the Chambers case, it says that a seaman's duty, a maritime worker's duty, can change from time to time. And weren't Mr. James's basic assignments or essential duties different during the summer, the summer fishing season, than the winter off-season? Well, it's our position that his essential duties never changed. Even though he was given a different title in Alaska – I believe he was called – He was an engineer in Alaska. – port engineer in Alaska, and then his title in Seattle was welder. And those are titles that were given to him by Wards Cove, his employer. His essential duties, however, never changed. He has always been in charge. So when he was in Alaska – why don't you run through it for me? I'd be helpful to see the duties. Sure. That they were essentially the same. Okay. Basically, Mr. James was in charge of the maintenance and repair of Wards Cove's vessels. He was one of the employees in charge of the maintenance and repair. As part of that maintenance and repair, he was required to travel up to Alaska during the on-season for the vessels when they're located up there in Alaska. And also, as part of this maintenance and repair work that he did, he also had to transfer equipment around the different Alaska facilities, which required him to travel out into open waters and, you know, brave the ocean swells. Well, he rode around in the vessels, did he not? He did, right. I mean, he rode aboard Wards Cove's vessels out on open waters, and that certainly would distinguish anything that he did in the winter. Well, it's our position that he rode out into open waters in furtherance of his duties of maintenance and repair. He also was a deckhand during the fishing season, and he rode up to Alaska and back down to Seattle during two of the four seasons, and he worked in ashore less than 50% of the time, to distinguish from what he did in the winter. Different job title, different pay. There were a lot of differences, it seems to me. Right. It's our position that, you know, the Supreme Court has made clear in Gazzone that a person's job title is not determinative of… So when he gets back down to Seattle, okay, so tell me his functions in Seattle. How are they similar to what he was doing in Alaska? He is, again, doing the welding on the vessels. He is maintaining the vessels, pumping out the bilge. Did he ride out in the open water? Excuse me? In Seattle, did he ride out in the open water, as he did in Alaska? He did not ride into open waters, per se. He stayed within the inland waters of King County. Does that make a difference? But he was only in the, you know, like they said, like Union. I don't… Does that make… According to the… Is that sort of the critical factor here, that he didn't go out and, you know, brave the high seas? According to the Supreme Court, we don't believe that it is a critical factor because… In one of the cases dealing with Boston Harbor? You'll have to… Excuse me? Let me ask you another one. How about, you know, there was a recent case… Well, I'm just curious if being in the open sea is critical. Right. I want to address that issue because I think it is important. In the Chandris v. Latsis case, the Supreme Court specifically rejected the voyage test as being, you know, the factor that would make a worker a Jones Act seaman. And, in fact, the worker in that case was injured while out in open waters on one of defendants' vessels, and the Court held that that particular worker was not a Jones Act seaman as a matter of law. Now, the Supreme Court said that there are issues of fact that could be presented to a jury, but, nevertheless, he still had to prove a substantial employment-related connection to the vessels, meaning that just because he was out in open waters and he happened to be injured out in open waters doesn't automatically make him a seaman as a matter of law. He still had to show a substantial connection to this fleet of vessels or this particular vessel. Counsel, in reviewing a propriety of the issuance of a summary judgment by the trial court, we are limited to considering what the trial court record was on which that decision was made, and it is your obligation to show that that record contained evidence raising questions of fact on which a jury could have found that this man or a judge, that this man was a Jones Act seaman. So I'd like you to tell us what is in the record that creates a genuine issue of material fact about this man's status as a Jones Act seaman that this Court either ignored or didn't consider. Well, first off, there are two parts to that test, the first part being that the worker, Mr. Jaynes, had to contribute to the function or the mission of the vessel. That's already been conceded by the jury. Now, you say that grant of summary judgment on the issue of Jones Act seaman status was improper. That means you believe that the record presented to the judge contained evidence that raised a genuine issue of material fact. I'd like to know what that evidence is on which you rely. Sure. Again, Mr. Jaynes spent 11 years in the service of Warts Cove's fleet of vessels. There's nothing in the record that indicates that he serviced other vessels. This is Warts Cove's vessels, the last four of which were on a year-round basis. During the last four years, he was in charge of the maintenance and the repair of those vessels. And as part of those duties, he was required to act as a deckhand, lookout, stowed away cargo, traveled out to sea, moved vessels, piloted vessels, whether it was in the open waters between here in Alaska or within the inland waters here in Seattle. All of his work was for the service of these vessels. And as far as the difference between what he was doing here versus Alaska, generally his essential duties never changed. And as this court had previously held in Cabral v. Teeley-Hibbets, in that case, Your Honors, the plaintiff was assigned to a barge. And during that particular assignment at the Ford Island Ferry Project, he was on board the barge for 90 percent of the time. But if you looked at his entire employment history with this particular employer, Healey-Hibbets, he was only temporarily working for the barge. And, in fact, most of his work entailed work on land. So your point is that the trial judge heard in not considering other prior employment history of this plaintiff and connect with this company rather than the history of the period, that he limited the period to the winter of 2002 and 2003, which you understand the ship was not in navigation but was in a form of dry dock. Is that correct? No, Your Honors. The vessels were not dry docked. They were afloat. They were moving around. Right. If not dry docked, I mean, they were out of service. They were not being used for the purpose for which they were intended. Right. And in light of this ---- Only temporarily, though. Correct. Only temporarily. And that ---- and in light of the Supreme Court's recent decision in Stewart v. Dutra, I don't believe that there's any issue, there should not be any issue, that these vessels were ---- Let me ask, if Stewart was the case I was thinking of, doesn't Stewart talk about, you know, the high seas issue versus ---- Sure. What was Stewart? Remind me of what Stewart was about. What Stewart did was Stewart eliminated the difference between a vessel and a vessel in navigation.  So that if it is a watercraft that is used or even capable of being used for transportation upon water, it is considered a vessel as a matter of law for purposes of the Jones Act. And in the case that we have here, there is no doubt that these boats were moving around the inland waters of King County during the winter season. If this Court were to want to limit the ---- But they were not being prepared to leave, to go out into the open waters. They were dry docks, but they also weren't, as Judge Pius said, temporarily. There was no plan to repair them and send them out to sea. Well, I think then you're ignoring the work history that this ---- that Mr. James had with Ward's Co. because every winter that he worked on these boats, the next spring, they're back up in Alaska. They're back to the whole history. The boats weren't in dry ---- The vessels were not in dry dock. They were never in dry dock. They were moored for ---- They were temporarily moored. Getting them ready to move out again when the season began. And during that time, they moved them around the lake. They had to reposition them maybe and do some work. And that ---- For me, one of the concerns is as long as he doesn't have to ---- The sailor doesn't have to be out on the high seas. He is on the water and moving around in water. So that Stewart case, as I recall, arises in the context of ---- Brown water workers. Right. Right. And even before Stewart, Stewart basically did not have this particular holding, but INDICTA did address the issue of brown water workers and whether or not they could be cast alongside of the marine workers that braved the ocean swells. And in that case, the Court did not preclude the finding that brown water workers can be Jones, Zach, Seaman. And ultimately, they are issues of fact that should be ---- So your ---- Is that the judge made findings, inappropriate findings here in granting summary judgment for the defendant. We believe that the ---- And that there was sufficient evidence here to at least raise a genuine tribal issue of fact on these issues relating to ---- that that should be the case. But even if you were to limit the review to his work solely in the Seattle shipyard, what he was doing was Seaman's work. Thank you. Your Honor. We took you over, so I'll give you a minute for rebuttal. Let me hear from the defense. Appellees. Good morning, Your Honor. May it please the Court. I'm Richard Nielsen of Nielsen Shields. I am appearing with respect to the 905B claim as co-counsel for Wards Cove. Mario Madden is appearing as co-counsel for Wards Cove on the Jones Act issues. There's a reason for it. We needn't get into it. But I am dealing only with the 905B claim. And I think our plan, unless the Court has other interests, is for me to take care of this very quickly and then defer to Mr. Madden on the Jones Act. I could go through the history. I could go through the structure. I could talk about the Longshore Act and how, between various courts and Congress over time, a system of remedies developed for harbor workers, especially harbor workers who sometimes are employed by vessel owners. Unless the Court wants me to, I won't get into that history. What we have here is really— For my part, I would like you to get to the point here. I'll get to the point. Why exactly the 905B claim for vessel negligence? Why is it barred, again, by this plaintiff? I will precisely get to the point. First, there is no allegation, there is no contention in this briefing or in that argument that there is any issue of fact as to the 905B dismissal. It is strictly a point of law, unlike what we hear about the Jones Act claim. The fact of the matter is that this man was working as a repairer at the time of this injury. Under 905B, although when a vessel owner both owns the vessel and employs harbor workers itself, then it's called a dual-capacity employer. Generally speaking, a longshoreman can sue his dual-capacity employer in negligence under 905B for any breach of its duties as vessel owner versus as stevedore employee, harbor worker employer, except if that individual is working as a ship repairer. The Ninth Circuit case that everybody talks about and is predominant is the Heise case. That's one where an individual, much like our plaintiff here, is working. The issue there was whether, at the moment of injury, he had to be doing repair work. In that case, he was a repairer, spent much of his time repairing, but at the moment of injury, Mr. Heise was handling a mooring line, a traditional seaman's duty. The contention there was that you could not have the 905B repair exclusion in that case because, at the moment of injury, he was not doing repair work. The Ninth Circuit said no. He does repair work in this employment relationship. Therefore, the 905B negligence claim against that vessel owner is barred. The due contention is that, in order to qualify under 905B, must actually be engaged in repairing work, doing repair work. No, not at all. I agree with Heise 100 percent. What I am saying here is that the plaintiff's contention in this case is that the sole contention in this case is that the trial court's decision should be reversed because the plaintiff here was not injured on the specific boat he was repairing at that moment. In this case, he was spending time... You think that is a requirement? No, I do not. 905B. No, I do not. He was injured while doing repair work. Any repair work. Heise says because he's doing any repair work, he doesn't have a 905B claim, even if, at the moment of injury, he was injured handling a mooring line. And it's because the issue is the employment relationship, the entire employment relationship. Now, if I may, plaintiffs... Well, this plaintiff fell and was injured when he slipped and fell on a defective gangway. Right. Is he entitled to any relief at all? Is anybody responsible for that? He's entitled to long-short compensation benefits, which he received in this case. He just gets workers' comp. He gets workers' comp. And if, in fact, he establishes it, if you reverse and he establishes it in the trial court below, then, in fact, he's a Jones Act seaman. Then he also gets Jones Act seaman benefits. But he took his long-short comp benefits, and he is entitled as a long-short harbor worker comp receiver to say, I'm going to sue my employer in negligence if I believe that that employer committed negligence harming me in its capacity as a vessel owner. Except if he's a repairer. So I'm just saying, 905B claims are unavailable to harbor workers who do repair. HEISI says any repair. HEISI says do not look at the moment of injury because, as I've already said, HEISI was injured handling mooring lines, not doing repairing. What Mr. Neal James, Mr. James wants to do, the man with two first names, he wants to say that the moment of injury counts in terms of what vessel he is on, i.e., was he at that moment repairing the vessel upon which he was hurt? And that's a fictional requirement. There is reference to the congressional record that speaks of a singular vessel. In the legislative history, they basically explained what they were doing, and they said, when a person is repairing a ship, he should not have the 905B remedy. It's an over-interpretation of the singularity of that legislative history. I'm starting to run over your ---- I'm sorry? You only got about four minutes left. You want to give some time to ---- Absolutely. With that, I will defer to Mr. Madden. All right. Good morning. Please support. My name is Mario Madden. I represent Wards Cove Packing. Since we are short on time, I just wanted to hit on some quick issues. At the Stewart case, I'd like to emphasize the fact of seaman status was not an issue in that case. The parties in that case ---- My only concern, one of the concerns I have is whether or not you have to be in open seas in order to be a seaman, and I don't think that's the law. I don't think that's a requirement at all. I would agree with you. I think that's clear. It's not a requirement. You can be right there in the harbor area and get injured, and you've got coverage. You just be out there sort of on the dredge, relaxing. But the key is, the question is whether the duties the person is involved in are seagoing duties, and that's what I want to turn the Court's attention to here. Substantial. Substantial connection. The substantial connection fact has to be substantial in duration and nature. And this Court said in Cabral that the question is whether the duties are primarily sea-based duties. Mr. James was a ship repairer. Mr. James has always been a ship repairer. He has worked as a welder on a boat. He has done welding onshore. When he was in the Seattle yard, 50 percent of his time was spent on the yard, and 50 percent of his time was spent working on boats. Now, Mr. James has tried to cobble together an issue of fact by saying, well, in Alaska, I did all this stuff. Well, first of all, we don't think that's relevant, because those are different jobs and different assignments. And I would turn the Court's attention to the record, ER-22, which is a Mr. James deposition, in which he was asked, what were your job duties when you were in Alaska working for Wards Cove? I had two different job assignments, actually. One was port engineer when I worked on boats. When the canning season started, I worked in the cannery. And he's asked what he did in the cannery, and he says, I did maintenance on the machines. So Mr. James has had a number of different job duties for Wards Cove, but they've always been maintenance duties. Now, he has had – he claims that he has had some sort of tangential opportunity to ride aboard vessels and occasionally has helped out, particularly in the Seattle yard, but also in Alaska. It is our – it's our contention that even if those are true, and we do have to take it in the light most favorable to the plaintiff, those are not substantial. They're not substantial in duration, not substantial in duration. How much is substantial? Well, that's a good question, Your Honor. Why isn't that a tribal issue of fact? I don't see how the district court judge can make that determination on this record. Well, I think – Looks to me like there was enough here to at least get a – you know, get to trial on that question. Well, I think, Your Honor, the Fifth Circuit has offered a 30 percent sort of rule of thumb, which is a rule of thumb. Well, the Supreme Court didn't actually adopt that. That's true, Your Honor. It is – you're right. It's not a clear-cut differentiation. However, if you look at the evidence that's actually been submitted here, it is just statements that I occasionally helped move vessels, I occasionally moved ropes. There has to be more than just a scintilla. There has to be more than just de minimis, as you said in the earlier argument. There has to be something from which a jury could actually infer, not just speculate. And it's our position that even if Mr. James's duties as alleged duties on the boats are considered, there's not enough evidence there to create a tribal material issue of fact. You know, we have the recent case where the guy was painting on the – he was a painter on the – was that one of the Supreme Court cases? Yeah.  Right. And in that case, the Supreme Court didn't specifically – I mean, there he was just – he was just like a day kind of fellow. He was, but it's – but it's – you really have to – that's true. It was just a one-day thing. But look at what the Supreme Court says about his activities. The Supreme Court specifically, both Justice Stevens and his dissent, and the Supreme Court for the Court, says that those were not seagoing duties. What he was doing that day was not seagoing. The question was whether the other stuff he did could be considered. That was the issue. There's no debate that the maintenance he was doing was not a seagoing activity. And I think that's key in this case. Mr. James did maintenance work. That is not a seagoing, sea-based duty. That is not enough to support – to satisfy the Chandra's test of a substantial nature of a connection to the vessel. And so if you look at what's left, it's just the little bit of work he may have done on the decks, and there's not enough evidence to support a material issue of fact. There you are. How about the argument that these vessels were not in navigation? Well, Your Honor, let me just add, I'm glad you asked that, because I wanted to ask that question as well, because the trial court judge took it away from the jury. And in your – you mentioned Chandra's in the portion – you didn't mention the Chandra's case in the portion of your brief dealing with in navigation, and how would you distinguish Chandra's? Well, Your Honor, I – and I think, actually, the Stewart case is probably even more so than the Chandra's, a difficult obstacle for us to overcome. The Stewart case has left that anything that's not practically incapable of navigation is considered a vessel of navigation. I have my own theory about how to get around Stewart. I tried to put that forth in our brief. But I think that, in all intellectual honesty, I think it's a difficult – the navigation aspect of this case is difficult for us to overcome. The Supreme Court – I mean, the district court did not have the Stewart case in front of it. That came out after the district court issued its opinion. So I don't know what effect that would have had on the district court. We had a recent case – not a recent case. A 2002 case called Martinez v. Signature Secrets. Are you familiar with that case? I'm afraid I'm not, Your Honor.  I'm afraid I'm not, Your Honor. Is there – I'm sorry. I will. I don't have it for you, Your Honor. I'm sorry. I would recommend it to you. Thank you, Your Honor. Any further questions? No questions. Do I have any further questions? Okay. You're off the hook. I said I'd give you a minute because we – Thank you, Your Honor. We – If I may, the Supreme Court has never held that maintenance and repair work are not seaman's duties. In fact, if you look at the cases – the Gazzone case pertained to a ship repairer who worked out of a shipyard, and his duties were to repair vessels. And in that case, the Supreme Court held that that worker could take his case to the jury. In Sanco v. La Crosse, the seaman in that case was a handyman that was employed on a dredge. And during the course of his employment, he didn't live on the dredge like Mr. James did, but his duties were general maintenance, cleaning, and repair of the dredge. And the Supreme Court in that case found that his maintenance and repair duties kept the vessel in seaworthy condition, which is a seaman's duty. In Norton v. Warner, the bargeman was held to be a seaman as a matter of law. The bargeman lived on the barge, took care of the lines, tightening or slackening them as needed, repaired leaks, pumped out the barge, did those things that Mr. James did, and watched over the barge during off hours. In that case, that particular worker was held to be a seaman as a matter of law. I see that the red light is on, but I have 16 seconds, so I'm going to just move into the Ninth Circuit cases that have also found that a worker can take his case to a jury. In Delain v. Dutra, you've got a worker that is clearly working in inland waters and never went out into open seas. His actual duties involved mechanical work, carpentry, and welding, although he occasionally helped move the barge that he was working upon four times in a matter of five months. This Court held that that was enough to present his case in front of the jury. In the State of Wenzel v. Seaworth Marine, this Court also held that a diver who was engaged in underwater ship repair and maintenance again was a Jones X or could be a Jones X seaman, and that issue could be presented in front of a jury. Thank you. Thank you, Counsel. The matter will be submitted. We appreciate your arguments.
judges: D.W. Nelson, Paez, Rafeedie